# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

**Jane Doe,**
Plaintiff,

v.



**NBCUniversal Media, LLC, Apple Inc., and John Does 1–60,**
Defendants.

Case No._____

# COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF, AND JURY DEMAND

## I. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States, including but not limited to:
   - Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e et seq.),
   - The Americans with Disabilities Act (42 U.S.C. § 12101 et seq.),
   - The Computer Fraud and Abuse Act (18 U.S.C. § 1030),
   - The Electronic Communications Privacy Act (18 U.S.C. §§ 2510, 2701),
   - 42 U.S.C. § 1983 for constitutional violations committed under color of law,
   - And other related federal civil rights statutes.

2. This Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a), as the state law claims arise from the same set of operative facts as the federal claims and form part of the same case or controversy.

3. Venue is proper in this District under 28 U.S.C. § 1391(b) because:
   A substantial part of the events and omissions giving rise to the claims occurred within the Southern District of New York;
   NBCUniversal Media, LLC is headquartered in this District and conducts

substantial business herein;

And Defendant Apple Inc. also conducts significant commercial activity in this District through its physical retail locations, digital infrastructure, and business partnerships.

4. This Court has personal jurisdiction over all Defendants because they either reside in this District, conduct business in this District, or committed tortious acts and constitutional violations that had a direct and foreseeable impact within this District.

5. Plaintiff has requested and intends to proceed under a pseudonym due to the sensitive nature of the claims, threats to personal safety, and to protect the identities of minor children and vulnerable third parties. Courts in this Circuit permit such requests where the balance of interests supports anonymity. See *Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 190 (2d Cir. 2008).

## II. PRELIMINARY STATEMENT

6. This action arises from a deliberate and escalating campaign of unlawful retaliation against Plaintiff Jane Doe, a senior executive at NBCUniversal. Within hours of filing a protected internal complaint on April 15, 2025, Plaintiff became the target of covert surveillance tactics, device compromise, and digital and physical intrusions that exceeded any lawful scope of employer response.

7. Backed by timestamped forensic evidence, legal preservation notices, and third-party confirmations, Plaintiff now brings this suit to expose and challenge the following:
   - Unauthorized digital access to her work-issued MacBook, including installation of a system-level audio driver granting persistent screen and microphone access immediately after her protected activity;
   - Compromise of her personal Apple devices via unauthorized mobile device management (MDM), certificate abuse, and VPN tunneling linked to enterprise infrastructure;
   - Physical surveillance near her home and child's school, including documented vehicle plate patterns, walkie-talkie intercepts, and Ring camera anomalies;
   - Planted digital artifacts used to elevate the matter to a purported national security concern - without basis or Plaintiff knowledge;
   - FOIA denials and GLOMAR responses from multiple federal agencies, strongly indicating coordination with or complicity by state or federal actors.

8. Defendants NBCUniversal and Apple Inc., acting individually and/or in concert with third parties and government-affiliated entities, enabled or executed a campaign that violated Plaintiff's rights under:
   - Title VII of the Civil Rights Act,
   - The Americans with Disabilities Act (ADA),
   - The Computer Fraud and Abuse Act (CFAA),
   - The Electronic Communications Privacy Act (ECPA),
   - 42 U.S.C. § 1983 (Constitutional Violations),
   - State law torts including invasion of privacy, intentional infliction of emotional distress, and child endangerment.
9. This case is not about routine corporate misconduct. It concerns the unlawful use of digital infrastructure and potential state resources to suppress a whistleblower, destabilize her safety, and sever her access to redress.
10. Plaintiff seeks injunctive relief, compensatory and punitive damages, and permission to proceed under pseudonym due to the ongoing risk to her and her minor child. The violations outlined herein are not speculative—they are documented, deliberate, and demand urgent judicial scrutiny.

## III. PARTIES

11. Plaintiff Jane Doe is a resident of New Jersey, employed by NBCUniversal, and parent of a minor child. Plaintiff's identity is being protected by order of the Court.
12. Defendant NBCUniversal Media, LLC is a global mass media company with offices in New York, New York, subject to suit in this District.
13. Defendant Apple Inc. is a multinational technology company whose products, services, and support personnel were essential to certain acts alleged herein.
14. Defendants John Does 1–50 are employees or agents of NBCUniversal, acting within the scope of their employment and, at relevant times, under color of law where so alleged.
15. Defendants John Does 51–60 are unidentified actors who facilitated or aided unlawful acts as described.

## IV. FACTUAL ALLEGATIONS

16. Plaintiff was on approved medical leave due to environmental, physical and mental illness impacting herself, her husband and her minor child.
17. During Plaintiff's absence, NBCUniversal initiated a secretive job reclassification process targeting Plaintiff's team members without her knowledge or consent.
18. Plaintiff's strategic responsibilities and projects were reallocated or dismantled without notification or justification.

19. Plaintiff was compelled to relocate residences due to hazardous environmental conditions, incurring substantial unreimbursed expenses.
20. Plaintiff did not disclose her new address to NBCUniversal employees nor in any NBCUniversal system.
21. Upon returning to work on December 16, 2024, Plaintiff discovered her role was informally downgraded and major projects reassigned.
22. Critical projects and assignments across global operations, among other key initiatives, were removed from her strategic scope.
23. Senior Executive Individual Defendant, lacking direct supervisory authority over Plaintiff, participated in: dismantling Plaintiff's organization; badge tracking and unauthorized workplace surveillance; and desk presence audits without Plaintiff's consent.
24. HR, with separate Senior Executive Defendant individual involvement, undertook reclassification of Plaintiff's team members, sidestepping Plaintiff's role and diminishing her professional authority.
25. Plaintiff was informed post-facto via optional CC on internal invitations and successfully intervened to halt the reclassification.
26. Plaintiff filed a formal workplace complaint with NBCUniversal Fair Employment division of Human Resources on April 15, 2025.
27. Within approximately one hour of Plaintiff's protected activity with NBCUniversal's Fair Employment team, unauthorized drivers—believed to grant system-level access—were installed on her company-issued device, without her consent or notification. This activity and its correlation with Plaintiff's complaint was documented on April 28, 2025.
28. Plaintiff documented abnormal behavior on her personal Apple BYOD phone, including an unverified MDM profile signed by NBCUniversal Enterprise with Entrust-issued certificates.
29. Plaintiff preserved digital evidence and sought forensic evaluation, following which NBCUniversal attempted to leverage her self-preservation correspondence as perceived misconduct.
30. Digital surveillance began escalating, including unauthorized access by Microsoft Teams to Plaintiff's work MacBook's screen and audio functions.
31. On April 28, 2025, Plaintiff documented more than 665 unauthorized instances in which Microsoft Teams appeared to access her MacBook's camera and/or microphone functions, based on verifiable log data and screen captures. These intrusions began immediately after her internal complaint.
32. Key evidence demonstrates the triggering of Teams audio access shortly after Plaintiff filed a fair employment complaint.

33. Upon discovering that her work-issued MacBook was actively surveilling her via Microsoft Teams screen and microphone access, Plaintiff placed the device in a Faraday bag each night to block further unauthorized recording of her private conversations inside her home.
34. As a hybrid employee who needed the device for work obligations from Thursday afternoon through Tuesday morning, she continued using the device during the day while securing it in the Faraday bag at night between April 28 through at least May 5.
35. After this containment period, Plaintiff began keeping the device in her garage, car, or basement when not in use, to further distance it from her family's living areas.
36. This timeline of digital surveillance awareness and containment measures coincides precisely with the suspected initiated physical surveillance of Plaintiff and family.
37. Plaintiff's then-legal counsel issued a preservation of evidence notice to NBCUniversal.
38. Ring camera logs synchronized with device logs in a timeframe corresponding to observed digital attacks.
39. Following further device compromise, Plaintiff submitted her BYOD device for forensic evaluation with Epic Data.
40. Epic Data's chief engineer verified an attempted physical interception of Plaintiff's BYOD device and notified Plaintiff she had likely been physically followed and her communications intercepted.
41. Plaintiff reported ongoing physical surveillance of herself, her spouse, and her child to law enforcement in Cliffside Park and Fort Lee, New Jersey and attempted, unsuccessfully, to obtain a report from NYPD.
42. Plaintiff notified the DOJ and FBI of the pattern of surveillance and threats.
43. Surveillance intensified near Plaintiff's child's school and home.
44. Apple Inc. received legal notice on June 2, 2025, to preserve Plaintiff's Apple ID and iCloud data. Despite this, Apple failed to revoke abused certificates or mitigate unauthorized MDM profiles, thereby facilitating continued intrusion into Plaintiff's private digital environment.
45. Plaintiff adopted a new unregistered iPhone and submitted her prior BYOD device for deep forensics, resulting in the discovery of a suspiciously planted, foreign-language email and other anomalies.
46. Plaintiff submitted FOIA requests to federal agencies. The NSA issued a GLOMAR response, refusing to confirm or deny involvement, while other agencies such as the FBI and NYPD either refused to act, denied access to

complaint procedures, or delayed processing—raising serious concerns of coordinated neglect or complicity.
47. Plaintiff's direct reports and team suffered abrupt and unexplained resignations, consistent with the pattern of retaliation and organizational destabilization.
48. Third-party declarations and forensic reports corroborate Plaintiff's account of coordinated retaliation and surveillance.

## V. CAUSES OF ACTION.

### First Cause of Action: Retaliation in Violation of Title VII

49. Plaintiff engaged in protected activity by reporting discrimination and retaliation to NBCUniversal's HR on April 15, 2025. Defendants subjected Plaintiff to ongoing intimidation, a hostile work environment, and adverse actions in direct consequence of her complaint, including professional demotion and coordinated efforts to isolate her.
50. Such conduct constitutes unlawful retaliation in violation of 42 U.S.C. § 2000e-3(a), which prohibits employer actions that would dissuade a reasonable employee from making or supporting a discrimination claim. See *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006); *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199 (2d Cir. 2006); *Summa v. Hofstra Univ.*, 708 F.3d 115 (2d Cir. 2013).
51. As a result, Plaintiff suffered economic, reputational, and psychological harm.

### Second Cause of Action: ADA Interference and Retaliation

52. Plaintiff has a recognized disability warranting ADA protection and medical leave. Defendants interfered with her ADA rights by sabotaging her position and subjecting her to enhanced surveillance upon her return.
53. Defendants' actions constitute interference and retaliation in violation of 42 U.S.C. § 12203. See *Burlington Northern*, *Kessler*, and *Summa*, supra.
54. Plaintiff sustained harm as a result.

### Third Cause of Action: Hostile Work Environment (Title VII and NY State Law)

55. Defendants, through repeated acts of exclusion, surveillance, and intimidation, created a pervasive hostile work environment.
56. Plaintiff was subjected to humiliation and distress, which altered the terms and conditions of her employment.
57. Such conduct is prohibited under Title VII and N.Y. Exec. Law § 296.

### Fourth Cause of Action: Invasion of Privacy (Intrusion Upon Seclusion)

58. Defendants intentionally intruded upon Plaintiff's solitude and seclusion by monitoring private communications, devices, and physical movements without her consent or lawful purpose.
59. Such actions are actionable under New York common law. See *United States v. Jones*, 565 U.S. 400 (2012); *Noriega v. Pastrana*, 2019 WL 13257768; *Benedict v. Hewlett-Packard Co.*, No. 13-cv-00119.
60. Plaintiff's expectation of privacy in her personal devices, communications, and movements was reasonable, and Defendants' conduct was highly offensive and unjustified.

## Fifth Cause of Action: Digital Trespass – Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030

61. Defendants, including Apple Inc., intentionally accessed Plaintiff's protected computers and electronic devices either without authorization or by exceeding authorized access.
62. These actions violated 18 U.S.C. §§ 1030(a)(2)(C), (a)(5)(B), and (a)(5)(C). See *Van Buren v. United States*, 141 S. Ct. 1648 (2021); *United States v. Nosal*, 676 F.3d 854 (9th Cir. 2012); *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127 (9th Cir. 2009).
63. As a result, Plaintiff suffered losses exceeding $15,000 in one year, including costs for forensic investigation, system mitigation, and data remediation.

## Sixth Cause of Action: Negligent Supervision and Retention

64. NBCUniversal and Apple Inc. negligently supervised, retained, and failed to discipline employees and agents who engaged in unlawful surveillance and retaliation.
65. This negligence directly resulted in Plaintiff's injury.

## Seventh Cause of Action: Intentional Infliction of Emotional Distress

66. Defendants' conduct was extreme, outrageous, and intended to cause Plaintiff severe distress.
67. Plaintiff has experienced significant psychological and emotional injury as a result. See *Howell v. New York Post Co.*, 81 N.Y.2d 115 (1993); *Conboy v. AT&T Corp.*, 241 F.3d 242 (2d Cir. 2001); *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140 (2d Cir. 2014).

## Eighth Cause of Action: Constitutional Violations (First and Fourth Amendments, 42 U.S.C. § 1983)

68. Certain Defendants acted under color of state law, or in concert with state actors, to deprive Plaintiff of rights secured by the Constitution.
69. Evidence of joint action includes law enforcement refusal to document complaints, GLOMAR responses, and surveillance behaviors. See *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288 (2001); *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982); *George v. Pacific-CSC*, 91 F.3d 1227 (9th Cir. 1996).

**Ninth Cause of Action: Child Endangerment**

70. These acts amount to a reckless disregard for the safety and psychological well-being of a child and are actionable under state law, including but not limited to:
    - New York Penal Law § 260.10(1): "A person is guilty of endangering the welfare of a child when they knowingly act in a manner likely to be injurious to the physical, mental or moral welfare of a child under the age of seventeen."
    - State v. Hitchcock, 98 N.Y.2d 586 (2002) (holding that surveillance, threats, or conduct causing mental or emotional harm to a child can trigger endangerment liability).
    - N.J. Stat. Ann. § 2C:24-4(a)(2): Defines child endangerment as "any act... which would make the child an abused or neglected child as defined in R.S.9:6-1."
    - State v. N.T., 442 N.J. Super. 242 (App. Div. 2015) (emphasizing that even non-physical acts may constitute endangerment if they place a child in imminent danger of psychological harm).
71. Surveillance tactics that infiltrated Plaintiff's home and followed her child's routines directly contravened public policy and child protection statutes, and rise to the level of tortious and statutory child endangerment.
72. Plaintiff's child was exposed to repeated proximity surveillance, which was both disturbing and foreseeably traumatic — violating Plaintiff's right to safeguard her minor's well-being.

**Tenth Cause of Action: Abuse of Digital Identity (Misuse of Apple ID and Credentials)**

73. Apple Inc., either through negligence or knowing enablement, permitted unauthorized access to Plaintiff's Apple ID and iCloud credentials, facilitating ongoing digital impersonation and data compromise.

**Eleventh Cause of Action: Violation of the Electronic Communications Privacy Act (ECPA), 18 U.S.C. § 2510 et seq.**

74. Defendants intentionally intercepted, disclosed, and used Plaintiff's wire, oral, and electronic communications without or lawful justification.

**Twelfth Cause of Action: Civil Conspiracy**
75. All Defendants knowingly and willfully agreed to participate in unlawful acts, including retaliation, surveillance, and intimidation.
76. Each Defendant committed overt acts in furtherance of the conspiracy, resulting in Plaintiff's injury.

## VII. EVIDENCE INDEX AND APPENDICES

77. The following appendices are incorporated by reference and contain the supporting evidence cited herein:
    - **Appendix A**: Damages Demand and Fallout Ledger
    - **Appendix B**: Digital Logs and Apple Alerts
    - **Appendix C**: Human Resources and Internal Communications
    - **Appendix D**: Medical Leave and Disability Documentation
    - **Appendix E**: Email and Messaging Records
    - **Appendix F**: Performance Record, Personal Impact, and Third-party Declarations
    - **Appendix G**: System Access and Certificate Evidence
    - **Appendix H**: Reassignments and Organizational Charts
    - **Appendix I**: FOIA and Law Enforcement Reporting Documentation
    - **Appendix J**: Vehicle Surveillance Logs
    - **Appendix K**: Surveillance Escalation Matrix
78. All appendices have been carefully reviewed and personally identifying information has been redacted. Exhibits containing confidential or trade secret material will be filed under seal as needed pursuant to the Court's rules.

## VIII. RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that the Court:
79. Enter judgment against all Defendants, jointly and severally, in the amount of $45,500,000. This figure reflects the extensive harm endured over the course of 85 days of unrelenting retaliation, privacy violations, and surveillance following Plaintiff's protected activity on April 15, 2025. The demand incorporates:
    - Severe emotional distress and mental anguish;
    - Endangerment and psychological impact to Plaintiff's minor child;
    - Forced relocation and related economic losses;
    - Career derailment and reputational harm;
    - Irreversible digital intrusion, surveillance, and personal violation.

The number 45.5 is intentional and symbolic. It serves as a stark rebuke to Defendants' pattern-based targeting, particularly the stalking of Plaintiff's undisclosed residence and weaponization of corporate and government infrastructure in retaliation for a fair employment complaint.

This demand is not about financial enrichment - it is about accountability. It reflects a proportional response to the systemic misconduct and escalating abuse of power orchestrated by the named Defendants and tolerated by those entrusted to investigate.

80. Award compensatory and punitive damages for malicious and reckless conduct.
81. Issue a preliminary and permanent injunction restraining Defendants from further retaliation, surveillance, harassment, or dissemination of Plaintiff's personal data.
82. Grant leave to proceed under a pseudonym and under seal as necessary to protect Plaintiff and her minor child.
83. Award attorneys' fees and costs as appropriate if and when counsel is retained.
84. Declare that any arbitration agreement, to the extent alleged to cover these claims, is unenforceable due to public policy and lack of consent.
85. Grant such other relief as the Court deems just and proper.

## Reservation of Rights and Opposition to Arbitration

86. To the extent any Defendant, including NBCUniversal Media, LLC, asserts the existence of an arbitration agreement that purports to apply to the claims raised herein, Plaintiff expressly and unequivocally objects to the enforceability or applicability of such agreement.
87. Plaintiff's claims encompass constitutional violations, post-complaint retaliation, CFAA digital trespass, invasion of privacy, intentional infliction of emotional distress, and third-party government and corporate misconduct — all of which fall outside the scope of any employment-based arbitration clause.
88. Any attempt to enforce arbitration would violate well-established public policy by attempting to force into secrecy serious allegations involving child endangerment, unlawful surveillance, digital intrusion, and coordinated retaliation after a protected legal complaint.
89. Plaintiff never consented to the arbitration of such claims, and no valid or enforceable agreement exists that would compel arbitration of these non-employment and constitutional matters.
90. Plaintiff reserves all rights to challenge any motion to compel arbitration and will seek full adjudication in this Court of the public, federal, and constitutional questions presented herein.

## IX. DEMAND FOR JURY TRIAL

91. Plaintiff demands a trial by jury on all claims so triable.

## X. STANDARD FOR SURVIVING A MOTION TO DISMISS

92. To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
93. The Court must assume the truth of the Plaintiff's allegations and draw all reasonable inferences in her favor. See *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).
94. The plausibility standard does not require detailed factual allegations but demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.
95. In employment retaliation, digital privacy, and constitutional rights cases — particularly those involving pro se plaintiffs — courts have emphasized that dismissal at the pleading stage is inappropriate where factual allegations plausibly suggest retaliatory motive, ongoing harm, and colorable constitutional injury. See *Littlejohn v. City of New York*, 795 F.3d 297 (2d Cir. 2015); *Shands v. Lakeland Cent. Sch. Dist.*, 993 F.3d 140 (2d Cir. 2021); *Gibson v. City of New York*, 2020 WL 1430041 (S.D.N.Y. Mar. 23, 2020).
96. This complaint satisfies those standards by providing a detailed chronology of conduct, adverse actions, forensic evidence, and plausible causal connections between protected activity and escalating harm.

Respectfully submitted,

*/s/ Jane Doe*

**Jane Doe**
*Plaintiff, Pro Se*
[Address and identifying information filed under seal per Court Order]
**Dated:** July 10, 2025
New York, New York