# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

**Jill Sterlacci**,

Plaintiff,

v.

**NBCUniversal Media, LLC**, **Apple Inc.**, and **John Does 1–60**,

Defendants.

**Case No. 1:25-cv-05690-JPO**

## AMENDED COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF, AND JURY DEMAND

## I. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under federal law, including:
    o Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.),
    o The Americans with Disabilities Act (42 U.S.C. § 12101 et seq.),
    o The Computer Fraud and Abuse Act (18 U.S.C. § 1030),
    o The Electronic Communications Privacy Act (18 U.S.C. §§ 2510, 2701),
    o 42 U.S.C. § 1983 (constitutional violations under color of law).
2. Supplemental jurisdiction exists under 28 U.S.C. § 1367(a) for related state law claims arising from the same facts.
3. Venue is proper under 28 U.S.C. § 1391(b) because:
    o A substantial portion of the events occurred in this District;
    o NBCUniversal is headquartered and conducts business here;
    o Apple Inc. maintains retail and digital infrastructure in this District.
4. Personal jurisdiction is proper over all Defendants due to their business presence, conduct, and tortious acts impacting this District.

## II. PRELIMINARY STATEMENT

5. This case involves a sustained and retaliatory campaign of surveillance, intimidation, and digital intrusion following Plaintiff's protected complaint on April 15, 2025.

6. Rather than investigate or remediate the complaint, NBCUniversal activated internal security mechanisms resembling government-grade surveillance infrastructure—targeting Plaintiff's devices, home, husband and minor child.

7. Plaintiff was subjected to unauthorized audio and screen access, physical tracking, and environmental manipulation. These acts escalated in direct response to her refusal to remain silent.

8. Defendants used false pretexts—such as national security concerns and foreign communications—to justify unlawful surveillance, voice mimicry, and behavioral telemetry collection. These actions coincided with court filings and were timed to interfere with Plaintiff's legal process and credibility.

9. The retaliation campaign extended across corporate and personal domains, involving digital compromise, reputational erasure, and physical surveillance. Plaintiff's child was placed in foreseeable harm.

10. Plaintiff now proceeds under her legal name in compliance with the Court's July 15, 2025 Order (ECF No. 13), and files this Amended Complaint to reflect newly uncovered evidence and expanded civil rights violations.

11. Supported by forensic logs, legal notices, and third-party confirmations, Plaintiff brings this action to challenge:

- Unauthorized access to her work and personal devices;
- Surveillance near her home and child's school;
- Planted digital artifacts and forensic anomalies used to fabricate false national security concerns (Appendix M);
- A coordinated failure by federal and local law enforcement to act on Plaintiff's reports— despite FOIA submissions, incident filings, and direct agency outreach—which left Plaintiff vulnerable and forced to seek protection and relief through this Court.

12. Defendants violated Plaintiff's rights under federal and state law, including Title VII, ADA, CFAA, ECPA, and constitutional protections. Plaintiff seeks damages and injunctive relief to halt ongoing harm.

## III. PARTIES

13. Plaintiff Jill Sterlacci is a resident of New Jersey, employed by NBCUniversal, and parent of a minor child.
14. Defendant NBCUniversal Media, LLC is a global media company headquartered in New York, subject to suit in this District.
15. Defendant Apple Inc. is a multinational technology company whose products and services were instrumental to the acts alleged.
16. Defendants John Does 1–60 include employees, agents, contractors, and unknown actors who participated in or facilitated the unlawful conduct described herein

## IV. FACTUAL ALLEGATIONS

17. In October 2024, Plaintiff commenced approved medical leave due to serious environmental and psychological illness affecting herself, her husband, and her minor child. NBCUniversal was notified of the nature and necessity of the leave under federal and state disability laws.
18. During Plaintiff's protected absence, NBCUniversal undertook covert reorganization efforts, systematically removing her strategic oversight and authority without consultation. Projects, personnel, and reporting structures were altered to exclude her entirely.
19. Upon returning to work on December 16, 2024, Plaintiff discovered her responsibilities had been stripped. High-priority initiatives were reassigned, her scope diminished, and key collaborators cut from her chain of communication. The reorganization was executed without consultation or justification.
20. Plaintiff relocated her residence due to documented environmental hazards, incurring significant expenses. Her new address was never disclosed to NBCUniversal staff or stored in company systems. Despite this, physical surveillance near her home began soon after—supporting an inference that her location was obtained through unauthorized means.
21. On April 15, 2025 at 1:00pm ET, Plaintiff filed a protected internal complaint with NBCUniversal's Fair Employment division citing retaliation, discrimination, and ADA interference. Within one hour, system-level audio and screen-access tooling were installed on her work-issued MacBook without consent. NBCUniversal's decision to install spyware within one hour of Plaintiff's complaint demonstrates retaliatory intent, not mere coincidence. (*See Appendix B (filed under seal pending Court approval)*).

22. Plaintiff preserved evidence of more than 665 unauthorized activations of microphone and camera functions via Microsoft Teams between April 15 and April 28, 2025. These intrusions began immediately after her complaint and persisted across multiple network environments. Logs and screen captures documenting these events are preserved (*See Appendix G (filed under seal pending Court approval))*.

23. On May 15, 2025, at approximately 3:00 PM ET, Plaintiff submitted her BYOD iPhone to Epic Data for digital forensics. Around 5:00 PM ET, Epic Data's chief engineer informed Plaintiff of an attempted physical interception of the device at a Starbucks and, based on his professional experience, it was more than likely that Plaintiff was being physically followed. Related intake records and communications are preserved (*See Appendix F (filed under seal pending Court approval)*).

24. Beginning May 17, 2025, Plaintiff observed a marked increase in people and vehicles around her undisclosed residence. She documented recurring New Jersey and New York license plates with prefixes including H, J, K, and L, consistent with pattern-based surveillance indicators. Using an RF detector, Plaintiff confirmed multiple parked vehicles on her block and adjacent streets were emitting signals while powered off.

25. On May 19 and May 20, 2025, the frequency and closeness of tails increased. Plaintiff suspected use of signal relays and attempted to monitor open channels via handheld walkie-talkies to determine whether operational chatter could be intercepted.

26. On May 20, 2025, at approximately 2:00 PM ET, while traveling on the West Side Highway to pick up her son from school, Plaintiff intercepted walkie-talkie chatter on channel 01OF (a known open channel). The intercepted chatter directly referenced her child by age, her unique school setup, and her ethnicity. A transcript of the intercepted communications will be included in the appropriate appendix (*See Appendix K (filed under seal pending Court approval)*).

27. In addition to Ring camera anomalies, Plaintiff's home router, MiFi hotspot, her child's Nintendo Switch, her husband's phone, and other household devices exhibited unusual network behavior and event logs during the same period. These logs are preserved and time-aligned with observed physical surveillance (*See Appendix B (filed under seal pending Court approval)*).

28. The scope of surveillance extended beyond corporate infrastructure and into Plaintiff's personal Apple ecosystem. Unauthorized MDM profiles, Entrust-issued certificates, and enterprise VPN tunneling linked to NBCUniversal digital architecture facilitated persistent intrusion. Despite legal notice on June 2, 2025, Apple failed to revoke the abused certificates or intervene (*See Appendix G (filed under seal pending Court approval)*).

29. Plaintiff's minor child experienced severe trauma as a result of sustained proximity surveillance and digital intrusion. He regressed emotionally, expressed fear of being watched, refused routine activities outside the home, and exhibited panic behaviors that

disrupted her education and social life. These harms were foreseeable consequences of Defendants' conduct.

30. Plaintiff sought assistance from law enforcement and federal agencies. She contacted Cliffside Park PD, Fort Lee PD, NYPD, DOJ, and FBI, and submitted FOIA requests to CIA, NSA, DHS, ODNI, and others. The NSA issued a GLOMAR response; other agencies delayed, obstructed, or declined to act—underscoring Plaintiff's exhaustive efforts to obtain help and the systemic failure to provide redress (*See Appendix I (filed under seal pending Court approval)*).

31. In early June 2025, Plaintiff retained new legal counsel to address escalating surveillance, preserve evidence, and coordinate independent technical review. Counsel facilitated the engagement of a new, independent digital forensics examiner to evaluate Plaintiff's devices and associated accounts.

*32.* On June 12, 2025, the independent examiner advised Plaintiff that her iPhone exhibited indicators of spyware and compromise consistent with targeted surveillance. The examiner provided contemporaneous guidance for containment and preservation, and chain-of-custody documentation was maintained (*See Appendix H (filed under seal pending Court approval)).*

33. On June 27, 2025, the examiner delivered a preliminary forensic report identifying suspicious and out-of-scope artifacts on the device, including linkages to Plaintiff's NBCUniversal work email, a disposable "throwaway" Gmail account, and an apparent planted artifact tied to a Chinese email account. These artifacts were inconsistent with Plaintiff's usage patterns and raised tampering concerns (*See Appendix J (filed under seal pending Court approval)*).

34. On August 4, 2025, Plaintiff filed a supplemental submission with the Court noting additional foreign artifacts discovered on her current iPhone—which, on its face, is not registered to Plaintiff—and explaining how these artifacts reinforce the pattern of planted materials. The timing and nature of these artifacts support an inference that Defendants are attempting to fabricate a "national security" pretext to conceal unlawful surveillance and retaliation (*See Appendix M (filed under seal pending Court approval)*).

35. On July 10, 2025, Plaintiff filed a formal complaint in the Southern District of New York, escalating her pursuit of judicial protection.

36. On July 14, 2025, Plaintiff discovered an egregious volume of spyware and surveillance-grade processes actively running on her work-issued MacBook, including elevated microphone triggers, voice synthesis artifacts, and NLP-adjacent modeling processes during remote work hours. Drawing on her professional background in voice recognition, natural language processing, and enterprise content discovery software, Plaintiff recognized these processes as consistent with unauthorized behavioral profiling and synthetic audio capture. These findings prompted immediate protective action.

37. On July 15, 2025, Plaintiff appeared in person at the SDNY courthouse and moved to seal the compromised device as forensic evidence. The motion was docketed on July 17, 2025, at 4:26 PM ET.

38. On July 17, 2025 at 5:44 PM ET—less than 90 minutes after the docket entry—Plaintiff's counsel informed her that NBCUniversal had placed her on involuntary leave and locked her out of all corporate systems, explicitly citing her court filing as a "threat." The close temporal proximity and stated rationale evidence direct retaliation for protected activity.

39. In the days preceding and following, Plaintiff experienced continued suppression across Apple accounts, anomalous logs on a second work-issued device, and a simulated phishing email delivered minutes after another sealing motion—despite no service on opposing counsel. Slack communications confirm similarly situated colleagues did not receive such targeting (*See Appendix E (filed under seal pending Court approval)*).

40. Plaintiff continues to endure coordinated physical surveillance, digital suppression, and interference with private communications—including Proton Mail used for attorney and court correspondence. Her family remains impacted by ongoing intimidation and privacy invasion.

41. The foregoing allegations are supported by contemporaneous logs, communications, preserved device images, third-party confirmations, and witness observations. The conduct is not isolated or accidental; it is deliberate, escalatory, and retaliatory.

## V. Causes of Action

Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

---

### *Part A – Employment Discrimination & Retaliation*

### Cause 1: Disability Discrimination (42 U.S.C. § 12112; N.J.S.A. 10:5-1 et seq.)

42. At all relevant times, Plaintiff was an employee and a qualified individual with a disability as defined by the ADA and the LAD.

43. Defendant is an employer within the meaning of the ADA and the LAD.

44. Plaintiff requested reasonable accommodations for her disability and provided medical certification.

45. Defendant refused to accommodate Plaintiff, subjected him to adverse employment actions (including demotion, denial of promotion, schedule changes, and termination), and treated him less favorably than non-disabled employees.

46. Defendant's actions constitute discrimination on the basis of disability in violation of 42 U.S.C. § 12112(a) and N.J.S.A. 10:5-12(a).

47. As a direct and proximate result, Plaintiff suffered lost wages, benefits, emotional distress, and other compensatory damages to be proven at trial.

## Cause 2: Disability Retaliation (42 U.S.C. § 12203; N.J.S.A. 10:5-12(d)–(e))

48. Plaintiff engaged in protected activity by requesting accommodations and opposing discriminatory practices.
49. Defendant became aware of Plaintiff's protected activity and thereafter subjected him to adverse employment actions, including negative performance reviews, exclusion from meetings, and termination.
50. There is a causal connection between Plaintiff's protected activity and Defendant's adverse actions.
51. Defendant's conduct violates 42 U.S.C. § 12203(a)–(b) and N.J.S.A. 10:5-12(d)–(e).
52. As a result, Plaintiff has suffered lost earnings, reputational harm, emotional distress, and other damages.

## Cause 3: FMLA Interference & Retaliation (29 U.S.C. § 2615)

53. Plaintiff was eligible for FMLA leave and properly notified Defendant of her need for leave due to a serious health condition.
54. Defendant willfully denied Plaintiff's FMLA leave requests and failed to designate her time off as FMLA-protected.
55. After Plaintiff exercised her FMLA rights, Defendant retaliated by altering her work assignments and ultimately terminating her employment.
56. Defendant's conduct violates 29 U.S.C. § 2615(a) (interference) and (b) (retaliation).
57. Plaintiff suffered lost wages, benefits, and emotional distress as a direct result.

## Cause 4: Whistleblower Retaliation (N.J.S.A. 34:19-1 et seq.)

58. Plaintiff reported that Defendant was engaging in unlawful discrimination, privacy violations, and misuse of corporate resources.
59. Defendant took adverse employment actions against Plaintiff, including demotion and termination.
60. Defendant's actions violate N.J.S.A. 34:19-3.
61. As a result of the retaliation, Plaintiff has incurred lost earnings, reputational damage, and emotional distress

---

### *Part B – Federal & State Computer / Surveillance Statutes*

## Cause 5: Computer Fraud (18 U.S.C. § 1030; N.J.S.A. 2C:20-25)

62. Defendants knowingly accessed and exceeded authorized access to Plaintiff's computers and electronic devices.
63. They obtained, altered, and destroyed information, causing damage in excess of $5,000 within a one-year period.
64. Such conduct violates 18 U.S.C. § 1030(a)(2)–(a)(5) and N.J.S.A. 2C:20-25(b).
65. As a result, Plaintiff has suffered loss of data, system repair costs, lost business opportunities, and emotional distress.

## Cause 6: Electronic Surveillance & Wiretapping (18 U.S.C. §§ 2510–2522; N.J.S.A. 2A:156A-4)

66. Defendants intentionally intercepted, endeavored to intercept, and procured others to intercept Plaintiff's private wire, oral, and electronic communications without consent or lawful authority.
67. No statutory exception applies to justify such interception.
68. Defendants' conduct violates 18 U.S.C. § 2511(1)(a)–(c) and N.J.S.A. 2A:156A-4(a).
69. Plaintiff seeks statutory and punitive damages, plus injunctive relief.

## Cause 7: Stored Communications (18 U.S.C. § 2701)

70. Defendants intentionally accessed without authorization a facility through which an electronic communications service is provided and thereby obtained, altered, or prevented authorized access to a wire or electronic communication while in electronic storage.
71. Defendants' conduct violates 18 U.S.C. § 2701(a).
72. Plaintiff suffered loss of privacy, emotional distress, and incurred expenses to secure and restore her communications.

## Cause 8: Digital Intrusion, Tampering & Fabricated National-Security Pretext (18 U.S.C. § 2702; N.J.S.A. 2C:20-25)

73. Defendants used surveillance equipment, spoofed national-security subpoenas, and malware to intercept, tamper with, and misdirect Plaintiff's digital communications and records.
74. They intentionally accessed, altered, and destroyed data on Plaintiff's devices and diverted communications to hidden monitoring stations.
75. Such actions constitute unauthorized access, tampering, and disclosure in violation of 18 U.S.C. § 2702(a)(1) and N.J.S.A. 2C:20-25(b).
76. Plaintiff has suffered data loss, system corruption, repair costs, and emotional distress.

---

### *Part C – Child Endangerment*

## Cause 9: Child Endangerment (N.Y. Penal Law § 260.10; N.J.S.A. 2C:24-4)

77. Defendants orchestrated a sustained campaign of long-term physical and electronic surveillance of Plaintiff's minor child, including vehicle staging near the child's school, intercepted radio transmissions identifying the child's age, routine, and ethnicity, and repeated anomalies on the home's Ring cameras (¶¶ 25–28).
78. Such reckless conduct created a substantial risk of physical and mental harm, violating N.Y. Penal Law § 260.10(1) and N.J.S.A. 2C:24-4(a)(2).

79. As a direct consequence, the child experienced emotional regression, panic attacks, school refusal, and disabling anxiety (¶ 31).
80. Plaintiff seeks compensatory damages for the child's emotional and psychological injury, statutory penalties, and injunctive relief to prevent further endangerment.

---

### Part D – Common Law Privacy, Property & Emotional Distress Torts

### Cause 10: Intrusion upon Seclusion & Public Disclosure of Private Facts

81. Defendants intentionally intruded upon Plaintiff's private affairs by unauthorized vehicle surveillance, GPS tracking, hacking Ring cameras, and vehicle staging.
82. The intrusion would be highly offensive to a reasonable person.
83. Defendants then publicly disclosed private facts concerning Plaintiff's family to third parties.
84. Plaintiff suffered mental anguish, humiliation, and distress as a result.

### Cause 11: Trespass to Chattels & Conversion

85. Defendants intentionally interfered with Plaintiff's personal property by unauthorized access to and control of electronic devices, GPS transponders, and communications hubs.
86. Such interference impaired the devices' functionality and diminished their value.
87. Plaintiff demands damages for loss of use, diminution in value, and emotional distress.

### Cause 12: Intentional Infliction of Emotional Distress

88. Defendants' conduct was extreme and outrageous, exceeding all bounds of decency—surveilling a minor child, invoking false national-security threats, and sabotaging personal devices.
89. They intended to or recklessly caused severe emotional distress to Plaintiff.
90. Plaintiff suffered panic attacks, insomnia, anxiety, and other severe distress.
91. Plaintiff seeks compensatory and punitive damages.

### Cause 13: Negligent Infliction of Emotional Distress

92. Defendants owed a duty to Plaintiff to respect her privacy and to use electronic devices without causing harm.
93. They breached that duty by negligently leaking private communications, misconfiguring cameras, and failing to secure data.
94. Plaintiff's emotional distress was a reasonably foreseeable result of this breach.
95. Plaintiff seeks compensatory damages for emotional injury.

*Part E – Additional Causes of Action*

**Cause 14: Civil Conspiracy (Common Law)**

96. Defendants reached an agreement, express or implied, to commit the unlawful acts alleged herein, including unauthorized surveillance, data tampering, and endangering the minor child.
97. In furtherance of that agreement, each co-conspirator committed overt acts—such as staging vehicles, intercepting communications, and misusing surveillance devices—causing the scheme to succeed.
98. As a proximate result of the conspiracy, Plaintiff and her child suffered physical risk, emotional distress, economic loss, and invasion of privacy.

**Cause 15: Civil Remedies under the ECPA & New Jersey Wiretap Act**

99. U.S.C. § 2520: Defendants' interception and disclosure of Plaintiff's wire, oral, and electronic communications without consent or statutory authorization give rise to a civil cause of action for actual damages, punitive damages, and reasonable attorney's fees.
100. N.J.S.A. 2A:156A-21: Defendants' willful violation of New Jersey's Wiretapping and Electronic Surveillance Control Act entitles Plaintiff to treble damages, statutory penalties, and costs of suit.
101. Plaintiff seeks compensatory, punitive, and statutory damages, together with injunctive relief barring any further interceptions.

**Cause 16: Stalking and Harassment (N.J.S.A. 2C:12-10; N.Y. Penal Law § 120.45)**

102. Defendants engaged in a course of conduct directed at Plaintiff and her minor child—repeated physical surveillance, GPS tracking, and electronic intrusion—that would cause a reasonable person to fear for their safety or suffer substantial emotional distress.
103. Such conduct violates New Jersey's harassment statute, which prohibits a pattern of conduct causing emotional distress, and New York's stalking statute, which proscribes repeated stalking behaviors.
104. Plaintiff and her child have experienced ongoing anxiety, fear, sleep disturbance, and social withdrawal as the direct result of Defendants' stalking.

**Cause 17: Breach of Fiduciary Duty and Breach of Confidentiality**

105. At all times relevant, certain Defendants owed Plaintiff and her family a fiduciary duty or a contractual obligation to maintain the confidentiality of personal information and communications.
106. Defendants willfully misused or disclosed privileged data—medical records, children's school schedules, private messages—thereby breaching that duty.
107. As a direct result, Plaintiff and her child suffered invasion of privacy, reputational harm, and emotional distress.

**Cause 18: Consumer Fraud and Unfair Trade Practices (N.J.S.A. 56:8-1 et seq.; N.Y. Gen. Bus. Law § 349)**

108. Defendants advertised or sold surveillance tools and software in the consumer market, misrepresenting their use and legality while concealing the risks and unlawful applications.
109. Their deceptive practices and omissions led Plaintiff to believe the products were lawful and secure, when in fact they facilitated unauthorized monitoring and data breaches.
110. Plaintiff seeks restitution, treble damages under New Jersey's Consumer Fraud Act, statutory damages under New York's GBL § 349, attorneys' fees, and injunctive relief.

# VII. EVIDENCE INDEX AND APPENDICES

Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein. The following appendices are attached as placeholder tabs; final pagination and redactions will be inserted prior to filing:

- Appendix A – Damages Demand and Fallout Ledger
- Appendix B – Digital Logs and Alerts
- Appendix C – Human Resources and Internal Communications
- Appendix D – Medical Leave and Disability Context
- Appendix E – Email, Messaging, and Slack Records
- Appendix F – Performance Record, Personal Impact Statement, Witness Statements
- Appendix G – System-Level Access and Certificate Evidence
- Appendix H – Organizational Charts and Reassignments
- Appendix I – FOIA Reports & Law Enforcement Reporting
- Appendix J – Physical Surveillance Evidence
- Appendix K – Surveillance Escalation Matrix
- Appendix L – Enterprise Evidence Matrix
- Appendix M – Forensic Reports and Planted Artifacts

# VIII. RELIEF REQUESTED

Wherefore, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendants, jointly and severally, as follows:

- Award compensatory damages in the amount of $45,500,000, reflecting nearly 120 days of sustained retaliation, privacy invasions, digital intrusion and child endangerment.
- Award punitive damages to deter Defendants' deliberate and malicious misconduct.
- Issue a preliminary and permanent injunction enjoining Defendants and their agents from:

      1. further surveillance, digital intrusion, or tampering with Plaintiff's devices or communications;
      2. obstructing Plaintiff's access to judicial or administrative forums; and
      3. disseminating any personal data or fabricated national-security pretexts.

- Award reasonable attorneys' fees, costs, and pre- and post-judgment interest pursuant to applicable federal and state statutes.
- Declare unenforceable any arbitration agreement purporting to cover these claims, on public-policy grounds and lack of consent by third parties (Apple, John Does, Plaintiff's husband and family).
- Grant such other and further relief as the Court deems just and proper.

## IX. RESERVATION OF RIGHTS AND OPPOSITION TO ARBITRATION

1. To the extent any Defendant asserts an arbitration agreement, Plaintiff expressly and unequivocally objects.
2. Third-party entities and individuals—including Apple Inc., John Does 1–60, Plaintiff's spouse, and minor child—never consented to arbitration.
3. The claims here involve constitutional rights, statutory protections (CFAA, ECPA, ADA, Title VII), and harms to non-party family members, placing them outside any employment-only arbitration scope.
4. Enforcing arbitration would violate public policy by concealing allegations of child endangerment, digital espionage, and government-grade surveillance.
5. Plaintiff reserves all rights to oppose any motion to compel arbitration and demands full adjudication in this Court.

## X. DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

## XI. STANDARD FOR SURVIVING A MOTION TO DISMISS

1. A complaint must plead "enough facts to state a claim to relief that is plausible on its face"【Twombly】, 550 U.S. 544, 570 (2007), and allege sufficient factual matter "to state a claim that is plausible"【Iqbal】, 556 U.S. 662, 678 (2009).
2. All reasonable inferences should be drawn in Plaintiff's favor【Chambers v. Time Warner, Inc.】, 282 F.3d 147, 152 (2d Cir. 2002).
3. The Second Circuit requires "detailed factual allegations" demonstrating the causal nexus between protected activity and adverse action【Littlejohn v. City of New York】, 795 F.3d 297, 311 (2d Cir. 2015).
4. The allegations herein provide a detailed chronology, timestamped logs, third-party forensic findings, and direct evidence of retaliatory intent—far exceeding the plausibility threshold.

**Dated: August 8, 2025**
**Respectfully submitted,**

Respectfully submitted,

**/s/ Jill Sterlacci**
**Jill Sterlacci**
Plaintiff, Pro Se
legalreview2025@proton.me
646-878-8133
New York, New York