UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JILL STERLACCI,

Plaintiff,

-v-

NBCUNIVERSAL MEDIA, LLC, *et al.*,

Defendants.

25-CV-5690 (JPO)

MEMORANDUM AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Jill Sterlacci, proceeding *pro se*, alleges that Defendants NBCUniversal Media,

LLC ("NBC"), Apple Inc. ("Apple"), and sixty John Does (collectively, "Defendants") have

been unlawfully retaliating against her for filing a workplace discrimination complaint.  (ECF

No. 23 ("FAC") ¶¶ 16-26.)

Before the Court are Apple's and NBC's motions to dismiss Sterlacci's first amended

complaint ("FAC").  For the reasons that follow, both motions are granted.

I.        **Background**

          A.        **Factual Background**

The following facts, taken from Sterlacci's FAC and her supplemental pleading (ECF No.

52 ("Sup. Pl.)), are accepted as true for purposes of resolving the motions to dismiss.  *Quadir v.*

*New York State Dep't of Lab.*, 39 F. Supp. 3d 528, 534 n. 1 (S.D.N.Y. 2014); *Fink v. Time*

*Warner Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013).

The FAC alleges that, after Sterlacci returned from medical leave in December 2024,

Sterlacci's employer, NBC, diminished her responsibilities and "cut" "key collaborators . . . from

her chain of communication."  (FAC ¶ 19.)  In response, Sterlacci allegedly filed a "protected

internal complaint with NBCUniversal's Fair Employment division citing retaliation,

1

discrimination, and ADA interference" on April 15, 2025.  (*Id.* ¶ 21.)  Since then, Sterlacci asserts that she was subjected to a litany of physical and electronic surveillance activities by NBC, including "unauthorized activations of microphone and camera functions via Microsoft Teams," "people and vehicles around her undisclosed residence," "walkie-talkie chatter on channel 010F . . . [that] directly referenced her child by age, his unique school setup, and his ethnicity," and "unusual network behavior and event logs" on her "home router, MiFi hotspot, her child's Nintendo Switch, her husband's phone, and other household devices."  (*Id.* ¶¶ 22-27.)

According to Sterlacci, on September 22, 2025, under duress and over her objection, she returned her work-issued devices to NBC.  (Sup. Pl. at 3.)  Sterlacci alleges that her termination from NBC three days later was used as a pretext to demand the return of her work-issued devices, thereby giving NBC the opportunity to wipe or alter the evidence at issue in this litigation.  (*Id.*)

As to Apple, Sterlacci alleges that "[u]nauthorized MDM profiles, Entrust-issued certificates, and enterprise VPN tunneling linked to NBCUniversal digital architecture facilitated persistent intrusion" by NBC on her NBC-owned MacBook and "[d]espite legal notice on June 2, 2025, Apple failed to revoke the abused certificates or intervene."  (FAC ¶ 28; *see also id.* ¶¶ 21, 36.)

Sterlacci claims that as a result of the alleged surveillance, her minor child experienced "severe trauma," and she has suffered emotional distress, reputational damage, loss of data, lost business, and "system repair costs."  (*Id.* ¶¶ 29, 47, 61, 65.)

Based on the foregoing facts, Sterlacci asserts claims under several federal and state laws, seeking compensatory damages in the amount of $45,500,000, as well as punitive damages and a preliminary and permanent injunction against the alleged surveillance.  (*Id.* at 11-12.)

### B.      Procedural Background

On July 10, 2025, Sterlacci initiated this action.  (ECF No. 1.)  Sterlacci also moved for a temporary restraining order ("TRO") (ECF No. 6), leave to proceed pseudonymously (ECF No. 4), and leave to seal certain "confidential exhibits" (ECF No. 9).  She filed memoranda of law supporting each motion.  (ECF Nos. 5, 8, 10.)

After this Court denied Sterlacci's leave to proceed under pseudonym (ECF No. 13), she chose to proceed with this action using her real name and filed two more complaints on the docket, including the operative FAC under her name (*see* FAC).  On September 10, 2025, the Court held a telephone conference with all parties to address three motions filed by Sterlacci, including the motion for a TRO, an emergency motion for judicial custody of Sterlacci's work-issued devices (ECF No. 37), and an *ex parte* motion for federal intervention to halt ongoing unlawful surveillance (ECF No. 41).  That same day, the Court denied all three motions.  (ECF No. 48.)  On September 20, 2025, Sterlacci filed another emergency letter motion to compel NBC to preserve her work-issued devices.[1]  (ECF No. 50.)

On October 29, 2025, Apple filed its motion to dismiss (ECF No. 57) along with its accompanying memorandum of law (ECF No. 58).  On October 30, 2025, NBC filed its motion to dismiss (ECF No. 62) and accompanying memorandum of law (ECF No. 63).  Sterlacci opposed both motions on November 9, 2025.  (ECF No. 68 ("Opp.").)  Apple filed a reply

---

[1] Because the Court ultimately grants the motions to dismiss, Sterlacci's motion at Docket Number 50 is denied as moot.  Regardless, her assertion that "[d]espite the Court's directive, Defendant [NBC] has insisted on the return of [their] devices while declining repeated requests for neutral forensic imaging" (ECF No. 50 at 1) misrepresents the Court's directive.  The Court never directed NBC to allow Sterlacci to retain her company laptop.  Rather, the Court asked Defendants' counsel only to confirm that, if their clients retained custody of the laptop, they understood that they were required to preserve—and not destroy—any evidence that might be relevant to claims that remain viable in this case.  (ECF No. 55 at 16.)  Sterlacci does not allege that NBC or Apple failed to comply with that directive.

memorandum in further support on November 20 (ECF No. 69), and NBC filed its reply memorandum in further support on November 21, 2025 (ECF No. 70).

Finally, on November 24, 2025, Sterlacci filed a letter motion for leave to file a sur-reply in further opposition to Defendants' motions to dismiss. (ECF No. 73.)[2]

## II.      Legal Standard

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," if a plaintiff has not "nudged [its] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.* at 570. *See also Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020) ("[T]he court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side."); *Marvin v. Allen*, No. 23-CV-5947, 2024 WL 4290722, at *3 (S.D.N.Y. Sept. 24, 2024) (same).

---

[2] Neither Apple nor NBC opposed the motion. The motion is granted.

In evaluating a Rule 12(b)(6) motion, the court "must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). "Because a Rule 12(b)(6) motion challenges the complaint as presented by the plaintiff, taking no account of its basis in evidence, a court adjudicating such a motion may review only a narrow universe of materials." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

"Generally, [courts] do not look beyond 'facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken.'" *Id.* (quoting *Concord Assocs., L.P. v. Entm't Props. Tr.*, 817 F.3d 46, 51 n.2 (2d Cir. 2016)); *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) ("In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." (internal quotation marks omitted)). In most instances, "the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint." *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006).[3]

---

[3] In her sur-reply, Sterlacci contends that NBC's reliance on the transcript of the telephone conference (ECF No. 55) is improper because it constitutes consideration of materials outside the pleadings. (ECF No. 73-1 at 2-5.) Consequently, Sterlacci contends that NBC's motion to dismiss must be converted into one for summary judgment, thereby requiring the Court to permit

### III.       Discussion

When a plaintiff proceeds *pro se*, a court is obliged to construe her pleadings liberally. *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004).  Where the factual allegations supporting a claim describe fantastic and implausible scenarios, however, the claims are properly dismissed as baseless.  *Abascal v. Jarkos*, 357 F. App'x 388, 390 (2d Cir. 2009) (summary order).  "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them."  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  The Second Circuit has adopted this analysis, even when a plaintiff has paid the required filing fee, with an eye toward preservation of judicial resources.  *See Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) (noting that "district courts are especially likely to be exposed to frivolous actions, and thus have an even greater need for inherent authority to dismiss such actions quickly in order to preserve scarce judicial resources").

Even construed liberally, the pleadings in this case are replete with implausible scenarios and, therefore, must be dismissed.  Sterlacci alleges, for example, that although her new address was never disclosed to NBC, the company began to physically surveil her house.  (FAC ¶ 20.) Sterlacci alleges that she documented recurring New Jersey and New York license plates with prefixes including H, J, K, and L, consistent with pattern-based surveillance indicators, and, using an RF detector, Sterlacci allegedly confirmed multiple parked vehicles on her block and adjacent streets were emitting signals while powered off.  (*Id.* ¶ 24.)  She further alleges that she detected "Ring camera anomalies" and unusual network behavior on "Plaintiff's home router,

---

discovery.  (*Id.* at 4.)  The Court need not reach the merits of this argument, however, because it grants the motion to dismiss without considering the conference transcript.

MiFi hotspot, her child's Nintendo Switch, her husband's phone, and other household devices."
(*Id.* ¶ 27.)  These claims, however, are not tantamount to factual allegations that give rise to cognizable causes of action.  Although the Court does not question the sincerity of Sterlacci's beliefs, most of the allegations in the FAC are implausible.  *See Denton*, 504 U.S. at 32-33; *Glascoe v. Solomon*, No. 18-CV-8284, 2020 WL 1272120, at *5 (S.D.N.Y. Mar. 17, 2020).  Because she fails to allege facts that raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, the FAC must be dismissed.  *See* Abascal, 357 F. App'x at 390.

Even so, given the "special solicitude" afforded to *pro se* plaintiffs, *Hicks v. Moore*, 513 F. App'x 50, 50 (2d Cir. 2013) (summary order) (quotation marks omitted), the Court takes a closer look at Sterlacci's FAC insofar as it may contain some cognizable allegations.  In any event, as set forth below, Sterlacci's FAC fails to state a cognizable claim.

### A.    Apple's Motion to Dismiss

Sterlacci's FAC alleges that Apple has played a role in "enabling or failing to mitigate unauthorized device access," which permitted NBC to gain unauthorized access to her personal and work devices.  (Opp. at 21.)  Furthermore, Sterlacci asserts that "Apple-managed systems authenticated NBCUniversal's credentials and allowed continued remote access to her devices without authorization," and that Apple failed to implement reasonable safeguards to prevent misuse of its systems "despite the foreseeable risk that those systems could be exploited to access consumer devices." (*Id.*)  Ultimately, Sterlacci argues that "these allegations are sufficient at the pleading stage to state claims sounding in negligence and breach of duty of care." (*Id.*)

Sterlacci's FAC's allegations as to Apple fail to survive the motion to dismiss standard.  Under New York and New Jersey laws—the only two that would be relevant to this claim—the

elements of negligence are the same.[4]  *Int'l Bus. Machines Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004) ("In the absence of substantive difference," courts in this district, applying the choice-of-law rules of New York, as the forum state, "will dispense with choice of law analysis.").

To prove a claim of negligence under either New Jersey or New York law, a plaintiff must establish that: (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; and (3) the defendant's breach caused the plaintiff's injuries.  *See Weinberg v. Dinger*, 106 N.J. 469, 484 (N.J. 1987) ("A cause of action founded upon negligence involves a breach of a duty of care that causes injury." (citations omitted)); *Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir. 2002) (enumerating elements under New York law).  Generally, a defendant "has no duty to control the conduct of third persons so as to prevent them from harming others."  *Baldeo v. Airbnb, Inc.*, No. 20-CV-7771, 2023 WL 7689652, at *7 (S.D.N.Y. Sep. 29, 2023) (quotation marks omitted) (referencing New York law), *report and recommendation adopted*, No. 20-CV-7771, 2024 WL 1367189 (S.D.N.Y. Mar. 30, 2024), *aff'd*, No. 24-1238, 2025 WL 3152716 (2d Cir. Nov. 12, 2025); *see also R.H. v. Mischenko*, No. A-3140-09T4, 2011 WL 2320844, at *4 (N.J. Super. Ct. App. Div. June 3, 2011).  A duty may arise where the relationship between the defendant and the third-person tortfeasor includes "defendant's actual control of the third person's actions."  *Baldeo*, 2023 WL 7689652, at *7 (quotation marks omitted).

---

[4] Under the choice-of-law rules of New York (the forum state), negligence claims, like the ones asserted by Sterlacci, are generally governed by the law of the state where the injury occurred. *See Krock v. Lipsay*, 97 F.3d 640, 646 (2d Cir. 1996) ("[W]here the parties are domiciled in different states, the locus of the tort will almost always be determinative in cases involving conduct-regulating laws." (citation omitted)).  Sterlacci specifies various injuries that occurred both in New York and New Jersey, including on the West Side highway, and in her home router. (FAC ¶¶ 26-27.)

Sterlacci fails to plausibly allege that Apple owed her a duty to prevent NBC's alleged intrusion into her personal and professional computers. She does not assert that Apple exercised any control over NBC's conduct. Absent such control, Apple had no duty to prevent NBC's actions, and Sterlacci therefore cannot plausibly state a claim for negligence against Apple.

**B.      NBC's Motion to Dismiss**

Sterlacci asserts a total of eighteen causes of action against NBC. (*See* FAC at 6-11.) Claims one through four assert federal and state employment discrimination and retaliation. (*Id.* at 6-7.) Claims five through eight assert violations of federal and state surveillance statutes. (*Id.* at 7-8.) Claim nine alleges child endangerment. (*Id.* at 8-9.) Claims ten through thirteen assert common-law torts relating to privacy, property, and emotional distress. (*Id.* at 9.) Finally, claims fourteen through eighteen assert civil conspiracy, wiretapping, stalking and harassment, breach of fiduciary duty and confidentiality, and consumer fraud and unfair trade practices. (*Id.* at 10-11.)

**1.      Federal and State Employment Discrimination and Retaliation**

Sterlacci brings causes of actions under federal and state employment discriminations statutes, including: for disability discrimination, 42 U.S.C. § 12112 and N.J.S.A. 10:5-1 *et seq.*; for disability retaliation, 42 U.S.C. § 12203 and N.J.S.A. 10:5-12(d)-(e); for interference with rights under the Family and Medical Leave Act ("FMLA") and retaliation, 29 U.S.C. § 2615; and for whistleblower retaliation, N.J.S.A. 34:19-1 *et seq*. (FAC at 6-7.)

Sterlacci fails to allege facts that would establish either disability discrimination or disability retaliation under federal or state law. First, the federal Americans with Disabilities Act (the "ADA") requires a plaintiff to exhaust administrative remedies before filing suit in federal court. *See Anderson v. City of New York*, 712 F. Supp. 3d 412, 425 (S.D.N.Y. 2023) (citing 42

U.S.C. § 2000e–5(e); 42 U.S.C. § 12117(a)); *see also Williams v. New York City Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006); *Roy v. Buffalo Philharmonic Orchestra*, 684 F. App'x 22, 23 (2d Cir. 2017) (summary order).  Exhaustion requires the timely filing of a charge with the Equal Employment Opportunity Commission (the "EEOC") and receipt of a notice of the right to sue. 42 U.S.C. § 2000e-5(e); *see also Williams*, 458 F.3d at 69-70.  Here, Sterlacci does not allege that she filed an EEOC charge or obtained a notice of right to sue.  Nor does she rebut NBC's argument that her ADA claims fail for lack of exhaustion; accordingly, she has conceded the point.  *See, e.g., Ventillo v. Falco*, No. 19-CV-3664, 2020 WL 7496294, at *12 (S.D.N.Y. Dec. 18, 2020) ("As [the p]laintiff did not respond to [the d]efendants on th[ese] points, he effectively conceded the argument by his failure to respond." (cleaned up)); *Newell v. State Univ. of N.Y. Westchester Cmty. Coll.*, No. 22-CV-8524, 2023 WL 4082030, at *3 (S.D.N.Y. June 20, 2023) (same).  Consequently, Sterlacci's ADA claims must be dismissed.

The New Jersey statute on which Sterlacci relies for her disability discrimination and retaliation claims—the New Jersey Law Against Discrimination (the "NJLAD")—does not provide relief here.  The FAC alleges that the challenged retaliatory conduct—including Sterlacci's demotion, denial of promotion, and suspension—occurred in New York, as can be reasonably inferred from her employment with NBC in a New York office.  (FAC ¶¶ 45, 49.) Courts have consistently held that the NJLAD does not apply extraterritorially in such circumstances.  *See Guzman v. Macy's Retail Holdings, Inc.*, No. 09-CV-4472, 2010 WL 1222044, at *9 (S.D.N.Y. Mar. 29, 2010) (dismissing NJLAD claim where plaintiff did not work in New Jersey, notwithstanding the statute's silence on geographic scope).  Accordingly, because the FAC alleges no employment nexus to New Jersey, Sterlacci fails to state a claim under the NJLAD.

Even if, as Sterlaccci contends, she performed a substantial amount of work from her New Jersey home pursuant to NBC's hybrid-work arrangement (Opp. at 20), that is insufficient to establish that NBC conducted business in New Jersey or purposefully targeted New Jersey. *See e.g. Khartchenko v. American Oncologic Hosp., Inc.*, No. 23-CV-23043, 2024 WL 4855958, at *9 (denying to apply NJLAD even though the "plaintiff may have worked remotely for a significant portion of her approximately 15-year employment with the Corporate Defendants"); *Kunkle v. Republic Bank*, No. 21-CV-20245, 2023 WL 4348688, at *6, 7 (D.N.J. July 5, 2023) ("the mere fact that [the plaintiff] pursued and was granted the ability to spend what amounts to a proportionately minimal portion of her time working from her home in New Jersey[] does not entitle her to the protections of the NJLAD" where the plaintiff "accepted and commenced employment" in Philadelphia, later accepted a promotion through the same Philadelphia office, and, during her over sixteen years of employment with the defendants, "only worked with and reported to individuals in the Philadelphia office" (footnote omitted)).

Sterlacci's third cause of action, brought under the FMLA's interference and retaliation provisions, similarly fails. Unlike the ADA, there is no requirement to exhaust administrative remedies before filing a lawsuit against private-sector employers for violations of the FMLA. *Ortega Duarte v. Highland Light Steam Laundry Inc.*, No. 21-CV-0990, 2021 WL 1758899, at *3 n.2 (S.D.N.Y. May 3, 2021). To prevail in federal court on a claim of interference with FMLA rights, a plaintiff must establish: "1) that she is an eligible employee under the FMLA; 2) that the defendant is an employer as defined by the FMLA; 3) that she was entitled to take leave under the FMLA; 4) that she gave notice to the defendant of her intention to take leave; and 5) that she was denied benefits to which she was entitled under the FMLA." *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 424 (2d Cir. 2016).

11

Here, Sterlacci has not plausibly alleged a prima facie case of interference.  Indeed, Sterlacci explicitly states in the FAC that NBC permitted her to take medical leave and reinstated her to her original position upon her return.  (FAC ¶¶ 17, 19.)  Although Sterlacci alleges that her "responsibilities were stripped" upon returning to work (*id.* ¶ 19), she pleads no nonconclusory facts describing what responsibilities were removed or the circumstances surrounding that alleged change.  Such bare assertions are insufficient to state a plausible claim.  *See Twombly*, 550 U.S. at 556.  Because the FAC alleges that Sterlacci both received the leave she requested and was restored to her position thereafter, it contains no factual allegation that NBC denied her any benefit to which she was entitled under the FMLA.  Accordingly, her FMLA interference claim fails.

Sterlacci fails to assert an FMLA retaliation claim as well.  To make out a prima facie case of FMLA retaliation, a plaintiff "must establish that: 1) [s]he exercised rights protected under the FMLA; 2) [s]he was qualified for h[er] position; 3) [s]he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004).  Sterlacci alleges two plausible retaliatory acts.  The first—her suspension in July 2025—was nine months after she returned from her leave.  (FAC ¶ 38.)  Given the nine-month interval between Sterlacci's return and the alleged retaliatory action, the FAC fails to support a plausible inference that her suspension was motivated by NBC's retaliatory animus.  *Reilly v. Revlon, Inc.*, 620 F. Supp. 2d 524, 538 (S.D.N.Y. 2009) (concluding that a three-month gap between the end of an employee's FMLA leave and termination is likely to be insufficient to give rise to an inference of retaliation).  The second—that she was stripped of her responsibilities while on leave (FAC ¶ 19)—does not qualify as an adverse action.  *See Molina v. John Jay Inst.*

12

*for Just. and Opportunity/City Univ. of New York*, 2024 WL 4276913, at \*11 (S.D.N.Y. Sep. 24, 2024) ("Because Plaintiff does not allege that he was demoted or that his pay was reduced, the reduction in the scope of his work, without more, does not constitute an adverse employment action.").

To the extent Sterlacci asserts retaliation predicated on alleged "digital compromise, reputational erasure, and physical surveillance" as well as purported harm involving her child (FAC ¶ 9), such allegations are facially implausible and therefore are not entitled to the presumption of truth. *See Denton*, 504 U.S. at 32-33.

Sterlacci's final claim within her FAC's "employment discrimination and retaliation" category (FAC at 6-7) arises under New Jersey's Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1 *et seq.* As with Sterlacci's other state law claims for retaliation, "it is well-established in New Jersey that claims of a New Jersey resident, relating to out-of-state employment, are governed by the law of the state in which that New Jersey resident is employed." *Sell It Soc., LLC v. Strauss*, 2018 WL 2357261, at \*14 (S.D.N.Y. Mar. 8, 2018) (quoting *Norris v. Harte-Hanks*, Inc., 122 F. App'x. 566, 569 (3d Cir. 2004) (summary order)) (dismissing CEPA claim for lack of New Jersey nexus where the plaintiff failed to allege that any of the defendants made or influenced the decision to terminate her employment in New Jersey). Again, it is undisputed that NBC is a "global media company headquarter in New York." (FAC ¶ 14.) Consequently, absent any other allegations, New York, and not New Jersey law, governs. *Norris*, 122 F. App'x at 569 (concluding that even if a plaintiff reports to work in New Jersey, the plaintiff's failure to allege that the defendant "engineered the misconduct" in New Jersey dooms her CEPA claim).

13

### 2.    Remaining Claims

Sterlacci's remaining causes of action are premised entirely on her implausible allegations of physical and electronic surveillance.  For the reasons already explained, those allegations fail to state a plausible claim for relief and, therefore, cannot sustain any of the remaining causes of action.  Accordingly, these claims are dismissed in their entirety, and the Court need not reach their merits.  *See Kraft v. City of New York*, 823 F. App'x 62, 64 (2d Cir. 2020) (summary order) (holding that "the district court did not err in *sua sponte* dismissing the complaint as frivolous," based on the plaintiff's allegations that he had "been the subject of 24-hour, multi-jurisdictional surveillance by federal 'fusion centers' and the New York State Intelligence Center, which put a 'digital marker' on him in order to collect his personal data and harass him").

### C.    Leave to Amend

Sterlacci requests in her sur-reply that the Court grant her leave to amend should it identify any "arguable deficiency."  (ECF No. 73-1 at 5.)  "Although Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend 'shall be freely given when justice so requires,' it is within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  Leave to amend may be denied in cases of undue delay, bad faith, dilatory motive, failure to cure deficiencies in previous amended complaints, undue prejudice to the opposing party, or futility of the amendment.  *See Hemphill v. Schott*, 141 F.3d 412, 420 (2d Cir.1998) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Sterlacci has filed three complaints on the docket.  There is no indication, on the basis of the facts alleged to date, that Sterlacci will be able to make out a colorable claim for relief.

14

Because the Court concludes that the defects in the FAC cannot be cured with further amendment, leave to amend is denied.

## IV.        Conclusion

For the foregoing reasons, Defendants' motions to dismiss are GRANTED.

The Clerk of Court is directed to terminate the motions at Docket Numbers 50, 52, 57, 62, and 73, to enter judgment of dismissal, and to close this case.

SO ORDERED.

Dated:  May 4, 2026
        New York, New York

_____
                J. PAUL OETKEN
             United States District Judge